**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**OMARI GRAYS,**

     **Plaintiff,**

**vs.**                       **Case No.  4:20cv162-AW/CAS**

**ANDREW SAUL, Commissioner
of Social Security,**

     **Defendant.**

                                 /

## <u>REPORT AND RECOMMENDATION</u>

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security of the Social Security Administration (SSA) denying Plaintiff's application for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act.  After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On February 6, 2017, an application was filed for SSI benefits on behalf of Plaintiff, a child under the age of 18, with an alleged disability onset date of November 29, 2001. Tr. 19, 198-206.[1]  The claim was denied initially on May 10, 2017, and upon reconsideration on November 29, 2017. Tr. 19, 80-108, 130, 134-35, 140-46.

Plaintiff filed a written request for hearing on December 7, 2017. Tr. 19.  A hearing was held on October 26, 2018, in Tallahassee, Florida, before Administrative Law Judge (ALJ) Alisa M. Tapia.  Tr. 19, 39, 45-79. Plaintiff and Plaintiff's mother, Tracie Baker, appeared and testified at the hearing.  *Id*.  Matt Liebenhaut, an attorney, represented Plaintiff.  Tr. 19.

On March 7, 2019, as a preface to the ALJ's decision, the ALJ stated:

> An individual under age 18 will be considered disabled if he has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  Notwithstanding the above, no individual under the age of 18 who engages in substantial gainful activity may be considered to be disabled.

Tr. 19.  Ultimately, the ALJ determined Plaintiff has not been disabled since February 6, 2017, the date the application was filed.  Tr. 16-39.

---

[1]  Citations to the transcript/administrative record contained in ECF No. 18 shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

On January 23, 2020, the Appeals Council denied a request for review of the ALJ's decision.[2]  Tr. 1-5, 195-96.  The decision of the ALJ became the final decision of the Commissioner, is ripe for review, and is the subject of Plaintiff's Complaint, ECF No. 1.  42 U.S.C. §§ 1381, *et seq.,* and 42 U.S.C. § 405(g).

## II.  Findings of the ALJ

Plaintiff was born in 2001 and, therefore, was an adolescent on February 6, 2017, the date the application was filed and was an adolescent as of the decision date.  Tr. 22.  Plaintiff has not engaged in substantial gainful activity since February 6, 2017.  *Id*.  Plaintiff has several severe impairments including borderline intellectual functioning, learning disorder, pes planus of both feet, and reconstructive surgery of weight-bearing joint.  *Id*.  Plaintiff's speech and language impairment, however, is not severe "because it does not cause more than minimal functional limitations."  *Id*.

Plaintiff was found not to have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

---

[2]  The Appeals Council refers to Plaintiff's request for review, Tr. 195-97, and Plaintiff's Brief, Tr. 338-39.  Tr. 6.  The Appeals Council also refers to two letters written by Dr. Christopher William Reb, a treating physician, dated May 28 and October 31, 2019.  Tr. 2, 9-10.  These letters post-date the ALJ's decision and, according to the Appeals Council, do "not affect the decision about whether [Plaintiff was] disabled beginning on or before March 7, 2019."  Tr. 2.  Plaintiff was advised that a new claim for SSI could be filed alleging disability after March 7, 2019.  *Id*.

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In making this determination, the ALJ considered Plaintiff's impairments under each of the Listing of Impairments, specifically section 101.03 pertaining to reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, section 112.02 pertaining to neurocognitive disorders, and section 112.11 pertaining to neurodevelopmental disorders. The ALJ noted the lack of medical evidence supporting any such impairment and further noted that Plaintiff's representative did not "contend that [Plaintiffs] impairments met or equaled a listing." Tr. 22.

The ALJ also considered whether Plaintiff's mental impairments satisfy the "paragraph B" criteria. *Id.* To satisfy the "paragraph B" criteria, the mental impairments must result in extreme limitation of one, or marked limitation of two, of the four areas of mental functioning including the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Tr. 23.

The ALJ found Plaintiff "has a *marked* limitation in his ability to independently, appropriately and effectively understand, remember, or apply information." *Id*. (emphasis added). Plaintiff has *no* limitation interacting with others, with the ALJ finding in part, that Plaintiff "was well

spoken" at the hearing and his "ability to independently, appropriately and effectively interact with his mother, friends, teachers, classmates, and the public supports a finding that [Plaintiff] has no limitation." *Id*. Plaintiff has a *moderate* limitation regarding concentrating, persisting, or maintaining pace. *Id*. The ALJ noted, in part, that Plaintiff "has difficulty following multiple directions because he becomes confused." *Id*. Plaintiff has *no* limitation adapting or managing oneself. *Id*. Ultimately, the ALJ concluded that because Plaintiff's "mental impairments do not cause at least one extreme limitation or two marked limitations, the paragraph B criteria are not satisfied." Tr. 24.

The ALJ concluded that "paragraph C" criteria were not met in that "[t]he record does not establish that [Plaintiff] has only marginal adjustment, that is, a minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life." *Id*.

Having determined that Plaintiff's severe impairments or combination of impairments do not meet or medically equal a listing, the ALJ was required to decide whether it results in limitations that functionally equal the listings. *See* 42 C.F.R § 416.926a(a); *see also* Social Security Ruling (SSR) 09-2p (Mar. 20, 2009). Tr. 24. The ALJ further explained that he

> evaluated the "whole child" in making findings regarding functional equivalence. The undersigned has first evaluated how the child

functions in all settings and at all times, as compared to other children the same age who do not have impairments. The undersigned has also assessed the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not "severe" in all of the affected domains. In evaluating the claimant's limitations, the undersigned has considered the type, extent, and frequency of help the claimant needs to function.

Tr. 24-25 (citing 20 C.F.R. § 416.926a(b) and (c) and SSR 09-01p).

There are six functional equivalence domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and, (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

The ALJ discussed relevant evidence, including the testimony of Plaintiff and his mother, Tr. 25-26; medical opinions of medical consultants, Tr. 26; treatment records, Tr. 26-31; and other records including from a teacher and coach, Tr. 31. The ALJ set forth findings considering the six domains in light of the limitations caused by Plaintiff's impairments. Tr. 31-39. The ALJ determined that Plaintiff has a *marked* limitation in acquiring and using information; *less than marked* limitations in attending and completing tasks; *no* limitation in interacting and relating with others; *less*

*than marked* limitation in moving about manipulating objects;[3] *no* limitation in the ability to care for himself; *less than marked* imitation in health and physical well-being.  Tr.  31-39.

The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning." Tr. 39.  As a result, the ALJ concluded that Plaintiff has not been disabled since February 6, 2017, the date the application was filed.  *Id*.

## III.  Analysis

### A.

A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).

---

[3]  Plaintiff claims the ALJ improperly afforded a less-than-marked limitation to Plaintiff in this functional domain.  ECF No. 21 at 10-14.

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* Biestek v. Berryhill, _U.S._, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (Substantial evidence "means-and means only-such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" (citations omitted)).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is

deferential, but the reviewing court conducts what has been referred to as "an independent review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

Plaintiff bears the burden of proving that he is disabled and, consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 416.912(a)(1); Moore, 405 F.3d at 1211.  The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ.  *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished).

ALJs are not prohibited from considering the claimant's appearance and demeanor at the hearing.  *See generally* Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987); *see also* 20 C.F.R. § 416.929(c)(3)(vii), (c)(4).

B.

The basic definition of disability for children provides:

> If you are under age 18, we will consider you disabled if you have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or is expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 416.906.

A child's claim for supplemental security income benefits is analyzed by following the rules set forth in 20 C.F.R. § 416.924, *et seq*.  Tr. 20-21.

The Commissioner "will consider the combined effects of all [the child's]

impairments upon [the child's] overall health and functioning," and is to

evaluate "any limitations in [the child's] functioning that result from . . .

symptoms, including pain."  20 C.F.R. § 416.924(a).  The claim is evaluated

in three steps:

> 1.  Is the child currently engaged in substantial gainful activity?
>
> 2.  Does the child have any severe impairments?
>
> 3.  Does the child have any severe impairments that meet, are medically equal to, or functionally equal in severity to, an impairment listed in Appendix 1 of 20 C.F.R. Part 404?

20 C.F.R. § 416.924(a)-(d); *see* Tr. 20.

At step two, the claimant's "physical and mental impairments(s)" are

considered to determine if the claimant has "an impairment or combination

of impairments that is severe."  20 C.F.R. § 416.924(a).  The claim is

denied at step two if the child does not have a severe impairment.  A "slight

abnormality or a combination of slight abnormalities that causes no more

than minimal functional limitations" is not a "severe impairment."  20 C.F.R.

§ 416.924(c).

At step three, the issue of whether the impairment meets or equals a

listed impairment is the same as for evaluation of an adult claim.  If the

impairment neither meets nor equals a listed impairment, the

Commissioner must next determine whether the impairment is functionally equal in severity to a listed impairment.  20 C.F.R. § 416.924(a).  This step is unique to child SSI disability claims.  There is no "residual functional capacity" determination, and no determination of ability to perform work.

"In determining whether a child's impairment functionally equals a listing, the regulations require consideration of 'six domains,' which are 'broad areas of functioning intended to capture all of what a child can and cannot do.'"  Gibbs v. Barnhart, 130 F. App'x 426, 429 (11th Cir. 2005) (unpublished) (citation omitted).

As to functional equivalency, the regulations provide:

> If you have a severe impairment or combination of impairments that does not meet or medically equal any listing, we will decide whether it results in limitations that functionally equal the listings.  By "functionally equal the listings," we mean that your impairment(s) must be of listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain, as explained in this section.

20 C.F.R. § 416.926a(a); *see also* 20 C.F.R. § 416.926a(d).  The domains are:

(i)     Acquiring and using information;

(ii)    Attending and completing tasks;

(iii)   Interacting and relating with others;

(iv)   Moving about and manipulating objects;

    (v)    Caring for yourself; and,

    (vi)    Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)–(vi).

      "[A] 'marked' limitation in a domain [will be found] when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  It "means a limitation that is 'more than moderate' but 'less than extreme.'"  *Id*.

      "[A]n 'extreme' limitation in a domain [will be found] when your impairment(s) interferes *very* seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

      The Commissioner's regulations provide that test scores are not to be relied upon without considering other evidence, and "[n]o single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain."  20 C.F.R. § 416.926a(e)(4)(i).  Test scores are considered "together with the other information we have about your functioning, including reports of classroom performance and the observations of school personnel and others."  20 C.F.R. § 416.926a(e)(4)(ii).

To decide whether the claimant has a "marked" or an "extreme" limitation, the Commissioner:

> will consider your functional limitations resulting from all of your impairments, including their interactive and cumulative effects. We will consider all the relevant information in your case record that helps us determine your functioning, including your signs, symptoms, and laboratory findings, the descriptions we have about your functioning from your parents, teachers, and other people who know you, and the relevant factors explained in 416.924a, 416.924b, and 416.929.

20 C.F.R. § 926a(e)(1)(i).

> The medical evidence may include formal testing that provides information about your development or functioning in terms of percentiles, percentages of delay, or age or grade equivalents. Standard scores (e.g., percentiles) can be converted to standard deviations. When you have such scores, we will consider them together with the information we have about your functioning to determine whether you have a "marked" or "extreme" limitation in a domain.

20 C.F.R. § 416.926a(e)(1)(ii).

C.

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of the record and resolve conflicts that might appear. 20 C.F.R. § 416.927.[4]  When considering medical opinions, the following

---

[4]  This provision applies to claims filed before March 27, 2017. For claims filed after that date, section 416.920c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

factors apply for determining the weight to give to any medical opinion: (1)
the frequency of examination and the length, nature, extent of the treatment
relationship; (2) the evidence in support of the opinion, such as "[t]he more
a medical source presents relevant evidence to support an opinion,
particularly medical signs and laboratory findings, the more weight" that
opinion is given; (3) the opinion's consistency with the record as a whole;
(4) whether the opinion is from a specialist and, if it is, it will be accorded
greater weight; and (5) other relevant but unspecified factors.
20 C.F.R. § 416.927(b) & (c)(1)-(6).

    The opinion of the claimant's treating physician must be accorded
considerable weight by the Commissioner unless good cause is shown to
the contrary.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).
This is so because treating physicians "are likely to be the medical
professionals most able to provide a detailed, longitudinal picture of your
medical impairment(s) and may bring a unique perspective to the medical
evidence that cannot be obtained from the objective medical findings alone
or from reports of individual examinations, such as consultative
examinations or brief hospitalizations."  20 C.F.R. § 416.927(c)(2).  "This
requires a relationship of both duration and frequency."  <u>Doyal v. Barnhart</u>,
331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004).  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," "where the evidence supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)); Bloodworth, 703 F.2d at 1240.  Stated otherwise, when good cause exists, the ALJ may disregard a treating physician's opinion but must clearly articulate the reasons for doing so.  Winschel v.

Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). But, the ALJ is not required to discuss every piece of evidence, so long as the decision is not a "broad rejection" that would prevent a reviewing court from concluding that the ALJ considered the claimant's medical condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

Opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927(d); see Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986). "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017).

D.

First, Plaintiff argues that the ALJ improperly assessed 'some weight'
to Plaintiff's treating primary care physician, Maci McDermott, M.D.'s,
opinion; and second, the ALJ erred in finding that Plaintiff had a less-than-
marked limitation in moving about and manipulating objects.  ECF No. 21 at
5-14.[5]

Plaintiff discusses Dr. McDermott's opinion considering the domain of
"moving about and manipulating objects" for which the ALJ determined
Plaintiff "has less than marked limitation."  Tr. 36; *see* Tr. 28-30, 38-39.
The ALJ determined the degree of Plaintiff's limitation in this and the other
five functional equivalence domains.  The analysis begins with Plaintiff's
and his mother's testimony and proceeds with an in-depth discussion of the
medical evidence, including Plaintiff's surgeries and outcomes.  Tr. 25-35.

As an early youth, Plaintiff enjoyed sports including football but
stopped playing football in 2014 "because he started complaining about his
feet and running differently.  After consulting with his doctor and experts
from Shands Hospital, they were informed that he was born with clubfeet

---

[5]  Plaintiff does not challenge the weight the ALJ placed upon opinions other than
that of Dr. McDermott.  ECF No. 21.

and his left foot is worse than the right foot.  **He did not have problems until he started playing sports**."  Tr. 26.  Plaintiff

> testified that his feet are his biggest problems. . . . His first
> foot surgery was in June 2015, which was not successful.[6]
> His second foot surgery was June 2017, which was not
> successful.[7]  His third surgery was in 2018.  He believes
> his foot has improved a little bit because he can stand an extra 50
> minutes than before.

Tr. 25.  The ALJ discusses Plaintiff's examinations and each surgery in detail beginning in or around January 2015 through June 2018.  Tr. 27-29.

---

[6]  "On January 22, 2015, [Plaintiff] visited North Florida Pediatrics for 13-year-old well check.  There were no concerns.  He had friends.  His extracurricular activity was football.  He denied past hospitalization.  His physical examination was normal (Exhibit 2F/12-14)."  Tr. 26.  **"On September 30, 2015, [Plaintiff] underwent left tenotomy Achilles tendon (TAL) and lateral column lengthening** (Exhibit 1F/20, 22)."  Tr. 27.

[7]  Plaintiff claims "the ALJ cites to none of the plethora of records from Shands, the actual provider who treated Plaintiff's condition."  ECF No. 21 at 12.  To the contrary, the ALJ discusses, in detail, Plaintiff's examination and treatment at Shands beginning in 2015 through 2017 when he had surgery on June 9, 2017, *see* Tr. 547-50, with Christopher William Reb, D.O., (not Christopher William) and had two post-operative visits.  Tr. 27-28.  (It appears Plaintiff was referred to and first met with Dr. Reb on October 25, 2016.  Tr. 440-44.)
Dr. Reb did not indicate any long-term disabling condition or limitation until his post-decision letter of May 28, 2019, Tr. 10, *see supra* at 3 n.2 and *infra* at 20.  *See, e.g.*, Tr. 28, 36, 359, 361, 459-60, 464, 525, 547-50, 569-70.  Dr. Reb wrote a letter on July 3, 2018, noting Plaintiff was under his care for treatment of the right foot, had surgery on June 8, 2018, Tr. 612-21, "and is *temporarily* not recommended for on campus school/work with an estimated return of 08/14/2018."  Tr. 569 (emphasis added).  *See infra* at 20 n.10.  On August 7, 2018, Dr. Reb advised: "please allow extra time between classes for ambulation."  Tr. 570.  The ALJ referred to both letters.  Tr. 29.

As noted by the ALJ, on January 8, 2018, Plaintiff visited, for the first time, with Dr. McDermott for a "well examination." Tr. 28, 578. The ALJ notes:

> On January 8, 2018, the claimant visited Maci J. McDermott, M.D. for well examination. He reported feeling safe and happy at home and school. He felt a bit down sometimes, but denied any loss of interest, trouble sleeping or concentrating, or change in appetite. He had no concerns. He had good grades in school and many friends. He stated that a lot of people "come to him to confide in him and he likes to help others." His extracurricular activities included writing music and playing video games. It was noted that he had surgery on his clubfeet, which limited his ability to do physical activity.[8] His medication was Vitamin D2. His physical examination was overall <u>normal</u> except bilateral lower extremities had prominent out toing, medial angulation of tibia and complete arch collapse. One foot was post-surgical and less severe. Dr. McDermott diagnosed the claimant with flat foot (pes planus, acquired, left foot) (Exhibit 15F/7-10).[9]

Tr. 28, 36; 578-81. From a "neuro" standpoint, Dr. McDermott noted in part: "normal tone and strength, normal gait." Tr. 579.

> On June 7, 2018, [Plaintiff] was hospitalized for coalition, talocalcaneal, equinus contracture of right ankle, and pes planovalgus, acquired, right. **He underwent surgery on his right foot on June 8, 2018, which included right talocalcaneal and subtalar joint arthrodesis, right gastrocnemiums [sic] recession, right tibialis posterior tendon debridement and repair, and right plantar calcaneonavicular spring ligament repair.** Christopher William [Reb], D.O., the surgeon, temporarily recommended no on-

---

[8] Plaintiff claims the ALJ did not cite to this sentence, ECF No. 21 at 12, but the contrary is true having referred to this note twice in the decision. Tr. 28, 36, 578.

[9] The ALJ quoted this paragraph verbatim when considering the 4th domain. Tr. 36.

campus school/work with an estimated return of August 14, 2018 (Exhibits 11F, 12F, 15F/41-50).

Tr. 29.[10]  (After the ALJ's decision, in 2019, Plaintiff submitted two post-decision letters from Dr. Reb to the Appeals Council making similar requests.  Tr. 9-10.  On May 28, 2019, Dr. Reb noted Plaintiff is under his care and, for the first time stated: "has a *permanent* foot condition."  Tr. 10 (emphasis added); *see supra* at 3 n.2.  On October 31, 2019, Dr. Reb stated Plaintiff "may return to school today.  Starting from now until the end of the school year please allow [Plaintiff] more time to get to his classes."  Tr. 9.).

On August 23, 2018, Plaintiff had his second and last visit with Dr. McDermott "for recheck of proteinuria.  Upon a physical examination, his gait was slightly abnormal due to leg conditions.  He was diagnosed with proteinuria, unspecified (Exhibit 15F/3)."  Tr. 29, 574.  Contemporaneously with this visit,

---

[10]  The ALJ noted that on March 15, 2018, Dr. Reb provided a "treating medical source opinion."  Tr. 30; 554-55.  Dr. Reb's diagnosis was "left tarsal coalition" and he further opined "that impairment will not last or be expected to last 12 months" and "[t]here was no limitations in all domains (Exhibit 10F)."  *Id*.  Dr. Reb completed the TMSO and determined Plaintiff had no limitation for each of the six domains but noted: "above do not well applied to the patients purpose for seeing me."  *Id*.  The ALJ gave Dr. Reb's "opinion assessment some weight," but noted "the evidence of record shows that [Plaintiff] has some limitations in domains 1, 2, 4 [moving about and manipulating objects], and 6 due to his physical and mental impairments."  Tr. 30.

> [o]n August 23, 2018, Dr. McDermott completed a Treating
> Medical Source Opinion [TMSO].  The diagnoses were
> talocalcaneal coalition, right severe pes planovalgus, right equinus
> contracture of ankle and multiple corrective surgeries.  The
> impairments were to last or be expected to last at least 12
> months.  Dr. McDermott opined that the claimant had no limitation
> in understanding, remembering, or applying information, moderate
> to marked limitation in concentrating, persisting, or maintaining
> pace, and moderate limitations in interacting with others and
> adapting or managing oneself  Dr. McDermott further opined that
> he had severe limitation in moving about to manipulate objects
> and marked limitation in health and physical well-being of the
> claimant (Exhibit 14F).  The undersigned gives Dr. McDermott's
> opinion *some weight* because it is not entirely consistent with the
> evidence.  For example, Dr. McDermott assessed the claimant
> with a moderate limitation in interacting with others, but the record
> supports he has no  limitations in this domain.

Tr. 30 (emphasis added).

The ALJ discusses domains one through three and then proceeds to
domain four--moving about and manipulating objects.  Tr. 35-36.  The ALJ
discusses the relevant regulatory standards and no fault is found with this
section of the decision.  The ALJ provides the bases for the determination
that Plaintiff "has less than marked limitation in moving about and
manipulating objects."  Tr. 36.

> <u>The claimant has less than marked limitation in moving about
> and manipulating objects</u>.[11]  The claimant has undergone multiple

---

[11]  As noted by the ALJ, Social Security Regulations, SSR 09-6p (Mar. 19, 2009),
20 C.F.R. § 416.926a(j)(3), "set forth some examples of limited functioning" in the
domain of "moving about and manipulating objects."  Tr. 36.  "The examples do not
apply to a child of a particular age; rather, they cover a range of ages and

surgeries concerning his clubbed feet, which has affected his ability to participate in sports and move around. His surgeon requested that he receive extra time between classes for ambulation. However, no disabling conditions have been shown in the evidence of record (Exhibits 1F/20, 22 [Tr. 360, 361-Jan. and Mar. 2016], 5F/53 [Tr. 459-June 2017-Dr. Reb pat. notes], 8F [Tr. 547-51-June 2017-Dr. Reb pat. notes], 12F [Tr. 569-June 3, 2018-Dr. Reb statement, 13F [Tr. 570-Aug. 7, 2018-Dr. Reb statement].

On January 8, 2018, the claimant visited Maci J. McDermott, M.D. for well examination. He reported feeling safe and happy at home and school. He had no concerns. His extracurricular activities included writing music and playing video games. It was noted that he had surgery on his clubfeet, which limited his ability to do physical activity. His medication was Vitamin D2. His physical examination was overall <u>normal</u> except bilateral lower extremities had prominent out toing, medial angulation of tibia and complete arch collapse. One foot was post-surgical and less severe. Dr. McDermott diagnosed the claimant with flat foot (pes planus, acquired, left foot) (Exhibit 15F/7-10).

In February 2018, the claimant's ESE teacher completed a Teacher Questionnaire. She opined that in moving about and manipulating objects, he has three no problems, three serious problems, and one very serious problem (Exhibit 13E) [Tr. 322-25]. In April 2018, the claimant's coach completed a Teacher Questionnaire. Coach Towels opined that in moving about and

---

developmental periods. In addition, the examples do not necessarily describe 'marked' or 'extreme' limitation in the domain." *Id*. Numerous examples of difficulty children could have in moving about and manipulating objects are noted. *Id*.

manipulating objects, he has seven very serious problems (Exhibit 14E) [Tr. 326-29] [*See* Tr. 36; *see also* Tr. 31].[12, 13]

The claimant's impairments do not seriously interfere with his ability to independently, appropriately and effectively move and manipulate objects, which supports the undersigned's finding that the claimant has less than marked limitation.  The undersigned's finding is consistent with the findings of DDS psychological and medical consultants Dr. Boger, Dr. Turner,

---

[12]  Plaintiff claims the ALJ summarized the teachers questionnaires "without indicating which problems were which, and without recognizing the personalized statements both teachers made at the bottom of their questionnaires, describing what they have witnessed of Plaintiff's difficulties (Tr. 322, 325 and 326-329)." ECF No. 12 at 12.  Regarding Ms. Holloman, the ALJ refers twice to her questionnaire, Tr. 31, 36, and refers specifically to her written statement regarding Plaintiff's "cleft foot, which affects his ability to move around campus without discomfort.  He needs extra time to get to classes."  *Compare* Tr. 31 *with* Tr. 324-25.  Regarding Coach Towels, the ALJ refers to his handwritten statement regarding Plaintiff's "depression at times because of his physical conditions."  *Compare* Tr. 31 *with* Tr. 328.

[13]  An ALJ considers testimony of a claimant's third-party witness in accordance with SSR 06–3p, SSR LEXIS 5 (Aug. 9, 2006), rescinded, eff. Mar. 27, 2017.  SSR 06–3p, clarified how SSA considers opinions from sources who are not what the agency terms "medical sources."  The SSA separates information sources into two main groups: "acceptable medical sources" and "other sources."  It then divides "other sources" into two groups: medical sources and non-medical sources. 20 C.F.R. § 416.902.  Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists.  20 C.F.R. § 416.913(a)(1)-(5).  In the category of "other sources," "medical sources" include nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists.  "Non-medical sources" include *school teachers and counselors*, public and private social welfare agency personnel, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.  20 C.F.R. § 416.913(d)(2)-(4).  "Information from these 'other sources' cannot establish the existence of a medically determinable impairment," according to SSR 06–3p.  Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007).  "Instead, there must be evidence from an 'acceptable medical source' for this purpose.  However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id*. quoting SSR 06–3p, 2006 SSR LEXIS 5, at *5.

Dr. Sadovnik and Dr. Pinnelas (Exhibits1A, 4A).[14]

Tr. 36.

Drs. Boger (psychology) and Turner (pediatrics) provided paper-evaluations at the "Initial" level on May 8 and 9, 2017, respectively.  Tr. 80-91.  Material here, Dr. Turner opined that Plaintiff had less than marked limitation in moving about and manipulating objects.  Tr. 85; *see* Tr. 30, 36.  Partial weight is given to this opinion.  Tr. 30.  Drs. Sadovnik (psychology) and Pinnelas (pediatrics) provided paper-review evaluations at the "Reconsideration" level on November 21 and 27, 2017, respectively.  Tr. 30, 92-103.  Material here, Dr. Pinnelas opined that Plaintiff had less than marked limitation in moving about and manipulating objects.  Tr. 30, 85.  The ALJ gave this opinion "great weight because it is consistent with the full record."  Tr. 31.  In part, Dr. Pinnelas reviewed records from William Sampson, M.D., a one-time medical consultant, noting Plaintiff's then recent surgery in June 2017 on the left foot, with surgery to follow on the right foot once the left foot heals.  Tr. 100; *see* Tr. 541-46 (Dr. Sampson's Nov. 9, 2017, evaluation).[15]

---

[14]  State agency medical consultants are considered experts in Social Security disability evaluations.  *See* 20 C.F.R. §§ 416.927(e), 416.913(a)(5).

[15]  Dr. Sampson diagnosed Plaintiff "with clubfeet-status post corrective surgery, left foot and learning disability (Exhibit 7F)."  Tr. 30; *see* Tr. 541, 543.  The ALJ considered Dr. Sampson's evaluation but noted that his "assessment, however, did not

As noted herein, Dr. McDermott examined Plaintiff on two occasions in 2018. Tr. 574-81. In January 2018, Dr. McDermott conducted a "well exam," and noted, in part, that Plaintiff had surgery on his left foot in October 2016 and left ankle reconstruction in June 2017. Tr. 578. Plaintiff was "alert, well hydrated, [and in] no acute distress." Regarding "neuro," Dr. McDermott noted "normal tone and strength, normal gait. *Id*. at 579. The assessment included: "[e]ncounter for routine child health examination without abnormal findings" and "[f]lat foot [pes planus] (acquired), left foot." *Id*.; *see also* Tr. 580 for additional notes.

Dr. McDermott examined Plaintiff again on August 23, 2018, with a chief complaint noted as "recheck proteinuria." Tr. 574. Dr. McDermott noted Plaintiff's right ankle reconstruction on June 2018. *Id*. Plaintiff's general appearance was the same. *Id*. An objective general pediatric examination was conducted which included a note under

---

contain any opinion regarding functional limitations," so the ALJ did not consider it for that purpose. *Id*. Nevertheless, Dr. Sampson determined Plaintiff's gait was normal; his right foot pointed laterally 45° with walking; and he was able to stand and walk on his heels but not right toes. Tr. 542, 546. From a musculoskeletal standpoint, Dr. Sampson determined Plaintiff "was able to get up from a seated position without difficulty" and "was able to get on and off the exam table without difficulty." Tr. 542. Regarding Plaintiff's right foot, Dr. Sampson stated: "everted and angulated laterally, absent arch prominence of 1st tarsal metatarsal joint. Left foot: Post surgical changes, absent arch with mild prominence of first tarsal metatarsal joint with no significant eversion; no tenderness." *Id*.

"extremities/back": "[g]ait slightly abn due to leg conditions."  *Id*.  Plaintiff

was to follow up "as needed."  Tr. 575.

      Further, in the TMSO, Dr. McDermott provides a diagnosis, agreed

the impairments lasted or can be expected to last at least 12 months and,

material here, opined Plaintiff had "severe limitation" in moving about and

manipulating objects.  Tr. 571.  On the face of this document,

Dr. McDermott does not explain the basis for this limitation.  *Id*.  Rather, the

evaluations were a series of X-box notations, *id*., which courts have found

are "not particularly informative" and are "weak evidence at best."  *See*

Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011) ("Given that the

'check-off form' did not cite any clinical test results or findings and

Dr. Lowder's previous treatment notes did not report any significant

limitations due to back pain, the ALJ found that the MSS was entitled to

'little evidentiary weight.'");  Dixon v. Astrue, No. 5:09-cv-320/RS/EMT, 2010

U.S. Dist. LEXIS 125831, at *46-48 (N.D. Fla. Oct. 26, 2010) (explaining

that ALJ properly rejected opinions expressed by treating physician on

"check-off" type forms where treating physician's own treatment notes did

not support opinions expressed on those forms);  Jones v. Comm'r of Soc.

Sec., 478 F. App'x 610, 612 (11th Cir. 2012) (unpublished) (holding that the

boxes checked by the doctors did not constitute their actual RFC

assessment because checking boxes did not indicate the degree and extent of the claimant's limitations); *see also* <u>Foster v. Astrue</u>, 410 F. App'x 831, 833 (5th Cir. 2011) (unpublished) (physicians use of "questionnaire" format typifies "brief or conclusory" testimony).

Dr. McDermott did not provide an acceptable explanation for her opinion or refer to objective medical evidence to support her opinion that Plaintiff had "severe limitation" regarding moving about and manipulating objects.  *See* <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

Nevertheless, the ALJ gave "Dr. McDermott's opinion some weight because it is not entirely consistent with the evidence.  For example, Dr. McDermott assessed the claimant with a moderate limitation in interacting with others, but the record supports he has no limitations in this domain."  Tr. 30.  Conversely, Dr. McDermott opined Plaintiff had no limitation regarding understanding, remembering, or applying information whereas the ALJ determined Plaintiff has a marked limitation in acquiring and using information.  Tr. 32.  Dr. McDermott gave Plaintiff a moderate *and* marked limitation in concentrating, persisting, or maintaining pace whereas the ALJ found Plaintiff had less than marked limitation in attending and completing tasks.  Tr. 33.  The main difference arose with the domain

of moving about and manipulating objects where Dr. McDermott opined Plaintiff at severe limitation whereas the ALJ found Plaintiff had less than marked imitation.  Tr.  36, 571.  However, as noted above, Dr. McDermott does not explain the basis for her opinion and her two medical records do not support her opinion.  Tr. 571, 574-81.

Substantial evidence supports the ALJ's determination to give "some weight" to Dr. McDermott's opinion and further supports the ALJ's determination that Plaintiff has less than marked limitation moving about and manipulating objects.  No error has been shown.

## IV.  Conclusion

Considering the record as a whole, substantial evidence in the record supports the ALJ's findings; and the ALJ correctly followed the law. Accordingly, it is respectfully recommended that Plaintiff's request to reverse the Commissioner's decision should be denied and the decision of the Commissioner that Plaintiff is not disabled should be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on June 25, 2021.

S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.